UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COREY P. CLAIRMONT,<br><br>Defendant. | CASE NO. CR17-198 RSM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

## I. INTRODUCTION

This matter is before the Court on Defendant's motion for compassionate release. Dkt. #79-1.[1] Defendant seeks early release from the 130 month, in-custody sentence imposed by this Court on June 1, 2018.[2] Dkt. #70. Defendant's estimated release date from Bureau of Prisons ("BOP") custody is January 21, 2027. Dkt. #79-1 at 2; Dkt. #82 at 3. He argues that he should be released early because numerous inmates, including Defendant, have tested positive for COVID-19 at the BOP facility where Defendant is housed and because BOP is ill-equipped to

---

[1] After filing his motion (Dkt. #76), Defendant filed a praecipe requesting that the Court consider his amended/corrected motion. Dkt. #79. The Court has considered only the amended/corrected motion (Dkt. #79-1) attached to Defendant's praecipe.

[2] Defendant was also sentenced to five years of supervised release. Dkt. #70.

ORDER – 1

address the risks of COVID-19. The government opposes the request. Dkt. #82. For the following reasons, the Court denies the motion.

## II. BACKGROUND

Defendant is currently housed at Federal Correctional Institution Yazoo City Medium ("Yazoo") in Mississippi. Dkt. #79-1 at 2. As of November 30, 2020, Defendant indicates that 130 inmates and 6 staff had active cases of COVID-19 infection at the Yazoo complex. Dkt. #79-1 at 2 (citing to the Bureau of Prisons website). This seemingly high incidence of COVID-19 infections appears to have persisted at Yazoo. *See* BUREAU OF PRISONS, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Jan. 7, 2021) (indicating 140 inmates and 6 staff with active cases of COVID-19 at Yazoo).[3]

Defendant, age 43, tested positive for COVID-19 on November 2, 2020. Dkt. #84 at 130. He reported no apparent symptoms but had a fever of 100.2 degrees. *Id.* At the time, he indicated that he had not experienced chills, fatigue, fever, cough, shortness of breath, or insomnia and did not have a history of asthma or chronic lung disease. *Id.* Defendant's prior medical history includes two pneumonic infections approximately ten years ago and three-and-a-half years ago and some history of major depressive disorder and posttraumatic stress disorder.[4] Dkt. #78 at 34; Dkt. #65 at ¶ 55.

//

---

[3] BOP indicates that an additional 42 inmates and 12 staff have active cases of COVID-19 within the Yazoo City Federal Correctional Complex which includes a high security penitentiary and a low security prison camp. BOP, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Jan. 7, 2021).

[4] Defendant also asserts, in his request to the warden for compassionate release and in his motion, that he had a history of asthma. Dkt. #76-2 at 2; Dkt. #79-1 at 3, 5; Dkt. #76-4 at ¶ 4. The government indicates that it was unable to identify any relevant history in Defendant's medical records and that when it checked with defense counsel, it was informed that asthma was included in the motion in error. Dkt. #82 at 9 fn. 5. Defendant does not address the issue.

ORDER – 2

### III. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Congress expanded those limited circumstances in the First Step Act of 2018, now allowing prisoners to directly petition district courts for compassionate release after exhausting administrative remedies with BOP:

> (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (italics reflecting First Step Act amendment).

The applicable, and referenced, Sentencing Commission policy statements specify that a district court should consider reduction of a sentence only where "[e]xtraordinary and compelling reasons warrant the reduction" and "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and should do so only "after considering the factors set forth in 18 U.S.C. § 3553(a)." United States Sentencing Guidelines

ORDER – 3

("USSG") § 1B1.13.  The Sentencing Commission's application notes indicate that extraordinary and compelling reasons may be based on the medical condition of the defendant, the age of the defendant, the family circumstances of the defendant, or, as a catch-all, for reasons other than a defendant's medical condition, age, or family circumstances.  USSG 1B1.13 cmt. n.1.  The contents of the policy statement provide persuasive guidance but do not constrain the Court's discretion in determining whether extraordinary and compelling circumstances justify compassionate release.  *See United States v. Posey*, Case No. 18-cr-280-RSL, 2020 WL 4599879, at *4 (W.D. Wash. Aug. 11, 2020) (noting that the guidance of the policy statement is persuasive but not binding).[5]

"Compassionate release is 'rare' and 'extraordinary,' and courts routinely deny" relief. *United States v. Dana*, 467 F. Supp. 3d 962, 968 (D. Or. 2020) (citation omitted).  The defendant bears the burden of establishing circumstances justifying compassionate release.  *Riley v. United States*, Case No. 19-cv-1522JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020).

**IV.   DISCUSSION**

There is no dispute that the Defendant exhausted his administrative remedies prior to seeking relief from this Court.  However, Defendant falls well short of his burden to establish an extraordinary and compelling reason for his release and does not establish that he is no longer a danger to the safety of any other person or the community.

//

---

[5] *See also United States v. Peterson-Siler*, Case No. 15-cr-118-RAJ, 2020 WL 5106722, at *6 (W.D. Wash. Aug. 31, 2020) (policy statement provides helpful guidance, but does not constrain courts' discretion); *United States v. Wells*, Case No. 16-cr-07-RSM, 2020 WL 5118165, at *2 (W.D. Wash. Aug. 31, 2020) (concluding that the Court has discretion to consider factors outside of those listed in the policy statement); *United States v. Powers*, Case No. 15-cr-166-TSZ, 2020 WL 3605748, *2 (W.D. Wash. July 2, 2020) (noting additional factors courts have considered in the context of COVID-19-related compassionate release motions).

ORDER – 4

Defendant does not attempt to argue that his prior COVID-19 infection and health history alone present an extraordinary and compelling justification for his release. *See* Dkt. #79-1 at 4 (citing only the catch-all provision of USSG. § 1B1.13, cmt. n.1(D)). The concession is appropriate as concern for Defendant's medical condition is overly speculative. Defendant cannot point to any existing, diagnosed medical condition that places him at heightened risk of COVID-19 complications. Rather, he focuses on harm that *may* occur to him as a COVID-19 "long-hauler"[6] and harm that *may* occur to him if BOP is unable to adequately care for possibly novel after-effects of COVID-19 infection.[7] *See also Dana*, 467 F. Supp. 3d at 968 ("[I]t is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (quoting *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (quotation marks omitted) (first alteration, the Court's).

Defendant attempts to up the ante by recounting what he perceives as BOP's mismanagement of the COVID-19 pandemic. Dkt. #79-1 at 2, 8 (pointing to BOP's delay in testing all inmates, BOP's failure to maximize home confinement, inmates' inability to socially

---

[6] Defendant indicates that a "long hauler" is "a person suffering from Post-acute Covid Syndrome." Dkt. #79-1 at 3. The government questions whether Defendant is a "long hauler" because, while much is unknown, "those who suffer long-term effects to their health are those who first suffered short-term effects." Dkt. #82 at 10.

[7] For instance, Defendant focuses only on the unknown future impacts of his COVID-19 infection. *See* Dkt. #79-1 at 3 (citing "long term, puzzling, possibly debilitating after-effects of the virus"); Dkt. #88 at 4. Likewise, Defendant argues that BOP is understaffed to adequately care for Post-acute Covid Syndrome inmates and that, if released, he could receive more adequate treatment at specialized treatment facilities forming throughout the country. *Id.*; Dkt. #88 at 3. But the argument is both speculative and does not acknowledge BOP's responsibility to provide necessary medical care and its ability to arrange for necessary medical treatment outside of BOP. In both cases, Defendant's evidence is overly generalized, consisting of news articles about the spread of COVID-19 at Yazoo and the long-term effects of COVID-19 infections, a declaration from unrelated litigation, and a report on BOP's approach to COVID-19 at FCI Terminal Island. Dkts. #76-3, #76-5, #76-6, #88-1, and #88-2.

ORDER – 5

distance, staff indifference to the pandemic, and lack of protective and sanitation supplies). Defendant argues that BOP is unable to curb the continued spread of COVID-19 within its facilities and is unable to adequately care for those within its custody. But these arguments are not specific to Defendant as he is only one of nearly 40,000 federal inmates that have tested positive at more than 200 BOP facilities. BOP, *COVID-19 Inmate Test Information*, https://www.bop.gov/coronavirus/ (last visited Jan. 7, 2021). At the same time, Defendant's evidence is far too thin to establish that BOP's agency-wide response to the COVID-19 pandemic necessarily constitutes an extraordinary and compelling justification for releasing all of the nearly 40,000 previously infected inmates from BOP custody.

Defendant also fails to establish that, if released, he would not pose a danger to the safety of any other person or the community. In this case, Defendant was found guilty of possessing methamphetamine with intent to distribute and possessing a firearm while prohibited from doing so and in furtherance of his drug trafficking crimes. Dkt. #60. These crimes were merely the latest in Defendant's long-running and escalating criminal history and were fueled by Defendant's acknowledged alcohol and methamphetamine addictions.[8] Defendant has served less than a third of his 130-month sentence. Yet Defendant does not submit any evidence demonstrating that he will no longer pose a danger to the community or significantly altering the sentencing matrix. Rather, Defendant simply states that he will no longer "pose a danger to the community if released immediately, since he will continue to be supervised with appropriate conditions if released." Dkt. #79-1 at 11. On the record, the Court is not able to conclude that Defendant is prepared, or has an adequate plan, for successful reintegration with the public.[9]

---

[8] Defendant continues to acknowledge his need for dual diagnosis treatment. Dkt. #88 at 7–8.

[9] Defendant indicates plans both to live with his supportive parents and to "apply to live at [the Union Gospel Mission] again while under supervision." See Dkt. #76-4 at ¶ 32; Dkt. #88 at 7.

ORDER – 6

## V. CONCLUSION

Accordingly, having reviewed Defendant's motion, the relevant briefing, the supporting documentation, and the remainder of the record, the Court hereby finds and ORDERS that Defendant's motion seeking compassionate release (Dkt. #76/Dkt. #79-1) is DENIED.

Dated this 7th day of January, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 7